## Parker v. Bixler et al.

*Israel Krohn,* for plaintiff.

*Carlton T. Woodring,* for defendants.

STEWART, P. J., October 12, 1936.—An appeal was entered in the above matter on June 30, 1936, by defendants. Defendants issued a rule upon plaintiff to file her statement. Plaintiff then presented her petition to strike off defendants' appeal. Plaintiff alleges that she recovered a judgment against defendants for $78 before Alderman Henzelman on or about April 9, 1935;. that the said alderman resigned his office on January 6, 1936, and was succeeded by W. E. Bibleheimer; that the docket of the said Henzelman containing the record of the judgment entered in favor of plaintiff was lost or destroyed; that plaintiff presented her petition to supply the proceedings in accordance with the Act of Assembly of April 30, 1850, P. L. 640, sec. 1, and its supplement of June 11, 1879, P. L. 151; that a hearing on said petition was had before Alderman Bibleheimer on June 2, 1936, who rendered his judgment on June 10, 1936, granting the prayer of the petition; that defendants appealed; "That judgment in favor of plaintiff having been rendered on or about April 9, 1935, and no appeal having been taken therefrom within the period of 20 days allowed by law for such purpose, the present appeal by defendants is invalid and of no legal effect."

Defendants filed an answer. They alleged that judgment for plaintiff was not entered on or about April 9, 1935, and "if entered, was so entered during July of 1935". The same averment is contained in the second paragraph. The Act of April 30, 1850, P. L. 640, as amended, provides:

"That in all cases where the dockets of any alderman or justice of the peace shall have been or may hereafter be destroyed or lost, it shall be lawful for any person or persons interested in any action pending or judgment had, and who may be desirous to have the same supplied, to apply to such alderman or justice, or their successors in office, or to any alderman or justice in any county in which the defendant or defendants in such proceedings may reside, by petition, setting forth the proceedings to

be supplied, and verified by affidavit; whereupon the said alderman or justice shall issue a precept in the nature of a writ of summons, which shall be served as in other cases, requiring the defendant in such action or judgment, or his representatives, to appear before such alderman or justice, on a day certain, to be named in said writ, not less than five nor more than eight days from the issuing thereof, and show cause why the prayer of the petitioner should not be granted; and in all cases where the facts set forth in such petition shall be denied, it shall be the duty of said alderman or justice to hear the parties and receive testimony as in other cases, as well his own testimony upon affidavit as the testimony of others; and upon the hearing thereof, if the said alderman or justice shall be of the opinion that the facts alleged in such petition are true, or in case such facts be not denied, he shall order that the said proceedings be supplied, and shall thereupon enter the same upon his docket, which said entries shall have the same force and effect as if the original record had not been lost or destroyed, and either party may have his remedy by appeal or *certiorari* as in other cases."

The only effect of the Act of June 11, 1879, P. L. 151, was to add the word "certiorari". The purpose of the act is perfectly plain. It presumes that there was a docket and that the docket contained a record of the case, which should be transcribed as nearly as possible on the docket of the justice whose docket was destroyed, or of his successor in office, or of some other justice in the county. The important thing is the identity of the subject matter.

The foundation for a suit to supply a lost docket is a petition. That petition in this case is attached to the transcript. It sets forth, substantially, the issuing of a summons on March 22, 1935, a hearing on March 30, 1935, a reservation of the decision for 10 days, and a rendering of judgment publicly on April 9, 1935, for $78 in favor of plaintiff and against defendants. Then follows the allegation that the docket has been lost or de-

stroyed, and a prayer that the record be supplied in ac-cordance with the above acts. Summons was served on defendants. On June 2, 1936, both parties appeared. Alderman Bibleheimer had a hearing. From the tran-script it is difficult for anyone to determine what day Alderman Henzelman rendered a judgment against de-fendants. Henzelman testified that he gave a judgment for plaintiff in July 1935, without mentioning the day, and that execution was issued, but that execution was not produced. Alderman Henzelman did not say that he ever had a civil docket. Alderman Bibleheimer states that he, Henzelman, thought he had a small red-covered book about six inches square where he entered his judgment of other cases. He further stated that in moving from his aldermanic office the certain goods that he took to his home this certain book must have been lost, and therefore he has not a record of any of his cases other than the orig-inal summons. Alderman Bibleheimer stated that no civil docket was ever turned over to him. The fourth section of the Act of March 20, 1810, P. L. 161, provides that the alderman must have a docket, and that every proceeding shall be entered in the docket. A well-known legal writer has said:

"Nothing is of more importance, nothing more entirely essential, to the prompt and correct discharge of the duties of a magistrate, than a regular, well kept docket. The justice should recollect that when he begins a docket entry he cannot tell how important may be the principles involved, or the consequences which may result from the cause, whether civil or criminal, which he is about to make a matter of record. There is no cause which he enters upon his docket, however trivial, which may not be carried before a court, and his conduct undergo a public, judicial, revision, either by certiorari or appeal. These considerations will, undoubtedly, induce a desire that all his entries and his return shall be of such a character that they will bear the severest scrutiny, the closest examina-tion."

An early English writer characterizes the importance attached to a transcript from the justice's docket, in such full and clear, honest and impressive language, that it is here inserted as deserving not only to be read but to be studied:

"A record or memorial, made by a justice of the peace, of things done before him judicially and in the execution of his office, shall be of such credit that it shall not be gainsaid. One man may affirm a thing, and another man may deny it, but if a record once say the word, no man shall be received to aver or speak against it; for if men should be permitted to deny the same there would never be any end of controversies; and, therefore, to avoid all contention, while one saith one thing and another saith another thing, the law reposeth itself, wholly and solely, in the report of the judge. And hereof it cometh that he (the judge or justice) cannot make a substitute or deputy in his office, seeing that he may not put over (to another) the confidence that is put in him. Great cause, therefore, have the justices to take heed that they abuse not this credit, either to the oppression of the subject, by making an untrue record, or the degrading of the king (or commonwealth) by suppressing the record that is true and lawful."

In Jones v. Evans, 1 Browne 207, the opinion of the court is as follows:

"Per Curiam. The fourth section of the one hundred dollar act, directs the Justice to keep a docket, or book, in which he is to enter, at large, *all the proceedings had before him;* it goes still further, and requires him to state, the *kind* of evidence upon which the plaintiff's demand may be founded; whether upon bond, note, penal or single bill, writing obligatory, book debt, damages on assumption, or whatever it may be: and, in case of an appeal, *the whole proceedings* shall be certified to the prothonotary of the proper county. We do not think the Legislature meant to impose it as a duty on the Justice, to *set out the evidence at large;* but only to state the *demand,*

and the *kind* of evidence produced to support it, so far as to enable the Court to discover the grounds of the controversy, and his decision thereon. With this provision the justice is bound to comply, and it is *our* duty, to see that the laws of the country are duly enforced."

Tested by those authorities, there has been no supplying of the record in this case according to the terms of the act of assembly. If the transcript is a true transcript of Alderman Bibleheimer's docket there is no judgment against defendants, and if this proceeding had been a certiorari instead of an appeal it would have to be reversed. One of the very interesting opinions on the dignity of a proceeding before a justice of the peace is Holly v. Travis, 267 Pa. 136. The Supreme Court, by a divided vote of four to three, reversed the Superior Court, and held:

"It is error for a court to hold that 'a justice's court is not a court of record, and the return of a constable to said court, is not, technically speaking, a record at all, at least not such a record as imports verity, as is the case with the record or court roll of a court of record, and it is therefore not entitled to the immunity from attack of a sheriff's return.' "

In Andreas v. Keller, 2 Northamp. 209, the syllabus is:

"It is the duty of a justice of the peace to state upon his docket the kind of evidence upon which the plaintiff's demand is founded, and if he fails to do so his judgment will be reversed on certiorari."

In Klotz v. Smith, 14 Northamp. 129, Judge Scott said:

"When a justice announces in the presence of the parties the time judgment will be given, and he does render it at the time appointed, his official duty is done. He is under no obligation to send personal notice to counsel. But if he makes such promise as a matter of accommodation and then neglects, or forgets to keep it, the defendant is not relieved from making inquiry about it when the information is not received, for he knows when judgment was entered."

In Kelly v. Kelly, 2 D. & C. 626, the syllabus is:

"Where a justice of the peace hears a case, but reserves his decision and enters judgment on a subsequent day against defendant without notice to him, such judgment will be reversed on *certiorari*."

In Hirsh et al. v. Dluge, 8 D. & C. 109, the syllabus is:

"Where a justice of the peace in a case arising from a summons in *assumpsit* reserves his decision without making such adjournment of the case to a day and hour certain, a judgment subsequently rendered without notice to the parties will be reversed on *certiorari*."

In Rudy v. Troup, 67 Pa. Superior Ct. 160, the syllabus is:

"Where a justice of the peace renders judgment publicly in his office three days after the hearing, the defendant will not be allowed an appeal nunc pro tunc on the ground that the justice had promised to notify him of the judgment, and had failed to do so."

These authorities are cited for the purpose of showing how important it is that testimony should be given as to the kind of evidence that was heard in the case before Alderman Henzelman, as to the amount of the judgment rendered, and as to the day on which it was rendered. If 20 days expired after the judgment was rendered by Alderman Henzelman and defendants had notice of the judgment and did not take an appeal the judgment would have to be final. As the case now stands, no one can say definitely when the judgment was entered by Alderman Henzelman. This, however, is not a certiorari, but is an appeal. One thing definitely appears on the transcript, and that is that when the hearing was had to supply the lost docket both parties appeared. The only subject that was before Alderman Bibleheimer was whether there was such a record in existence as plaintiff claimed. Without setting out the record, he gave judgment in favor of plaintiff. What is now before us? Counsel stated that there were no cases on the subject. As a matter of fact we have only found three where the act is referred to: Chapin v. Mills Store Co., Ltd., 47 Pa. C. C. 299; Skoff et al. v. Zalac,

76 Pitts. 327 (a certiorari where Judge Evans reversed the decisions) ; and Henry & Co. v. Mingle, 27 Dist. R. 944, the syllabus of which is:

"Under the Act of June 11, 1879, P. L. 151, which provides how the dockets of any justice of the peace, which are lost or destroyed, may be supplied, the petition presented for that purpose is sufficient if it sets forth the names of the parties, the justice before whom the original action was brought, the date of the rendering of the judgment, that it was publicly rendered, the amount of the judgment and the costs. It is not necessary to set out an exact copy of the original record; nor is it necessary to join all the parties in interest as petitioners or respondents, if the names are all stated in the petition."

In that case there is a careful discussion by Judge Cummins of the act and the procedure under the act. It appeared that the justice entered the following judgment:

"Now, May 7, 1915, after hearing allegations and proof on the part of the plaintiff, the defendant offering no *contra* proof, I hereby order that the proceedings as they appeared on the docket of John O. Murray, late justice of the peace in Huntingdon County, Pennsylvania, be supplied, and I hereby enter judgment on my docket in favor of the plaintiffs and against the defendant as of Aug. 2, 1882, in the sum of $77.50; costs, 80 cents."

When the case was called for trial, defendant's counsel made a motion to quash on the ground of defects in the procedure. Judge Cummins denied the motion, and in the opinion discussed the question at large, and said: "We insist we were correct in our ruling." He held that the proceeding was de novo, and was confined to the one subject, to wit, was there a judgment obtained before the justice of the peace, and what were the particulars of the record of that judgment? On page 948 it appears:

"The jury rendered the following verdict: 'And now, to wit, Aug. 8, 1916, we, the jurors empaneled in the above entitled case, find a verdict in favor of the plaintiff for a restoration or supply of the record of John O. Murray,

justice of the peace, in this, that the judgment was entered Aug. 2, 1882, in favor of the plaintiff and against the defendant for the sum of $77.50, together with 80 cents costs. And we further find a verdict in favor of the plaintiff and against the defendant for the sum of $77.50, with interest from Aug. 2, 1882, and 80 cents costs.' "

The judge said: "That part of the verdict which provides, 'And we further find a verdict in favor of the plaintiff and against the defendant for the sum of $77.50, with interest from Aug. 2, 1882, and 80 cents costs,' is surplusage and directed to be stricken from the record, the balance of the verdict to stand."

The present rule must be discharged, but on the trial of the appeal, as at present advised, the issue must be confined to a determination of what was in the record before Alderman Henzelman.

And now, October 12, 1936, the rule to show cause why the appeal should not be stricken off is discharged.